***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms the Opinion and Award of Deputy Commissioner Houser and enters the following Opinion and Award:
 *********** ISSUES TO BE DETERMINED
1. Whether plaintiff is entitled to additional indemnity compensation as the result of his admittedly compensable September 18, 2008, injury by accident.
2. Whether plaintiff has reached maximum medical improvement.
3. Whether plaintiff is entitled to have defendant pay for the surgery recommended by Dr. James E. Fleischli for his admittedly compensable left shoulder injury. *Page 2 
4. Whether plaintiff is entitled to have defendant pay for additional medical treatment for his admittedly compensable head injury.
 *********** EVIDENTIARY MATTERS
At the hearing before the Deputy Commissioner, plaintiff submitted the following:
 a. Correspondence dated September 22, 2008, which was admitted into the record and marked as Plaintiff's Exhibit (1);
 b. Correspondence dated May 19, 2009, which was admitted into the record and marked as Plaintiff's Exhibit (2);
 c. A Packet of Job Search Records, which was admitted into the record and marked as Plaintiff's Exhibit (3) and;
 d. A Trade School Document, which was admitted into the record and marked as Plaintiff's Exhibit (4).
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The date of the injury which is the subject of this claim is August 26, 2008.
2. On all relevant dates, the parties hereto were subject to and bound by the provisions in the North Carolina Workers' Compensation Act.
3. On all relevant dates, an employee-employer relationship existed between plaintiff-employee and defendant-employer. *Page 3 
4. On the date of plaintiff's injury, defendant-employer employed three (3) or more employees.
5. On the date of plaintiff's injury, the defendant-employer was self-insured and the third-party administrator was Broadspire.
6. Defendant filed an Industrial Commission Form 60 on September 18, 2008, admitting plaintiff's claim for benefits arising from an injury of his head, neck, and shoulder.
7. Plaintiff is currently receiving indemnity compensation as a result of the Industrial Commission's Order of September 10, 2009, in the amount of $786.00 per week.
8. At the hearing before the Deputy Commissioner, the parties submitted a `Notebook of Various Stipulated Exhibits', which was admitted into the record and marked as Stipulated Exhibit (2) and which included the following:
 a. Industrial Commission Forms and Filings;
 b. Defendant's Response to Plaintiff's First Set of Interrogatories and Request for Production of Documents;
 c. Medical Records and;
 d. Correspondence Related to Defendant's Verification of their Discovery Responses and the Verification itself.
9. Also made part of the record are the depositions of Dr. James E. Fleischli, Dr. Daniel Bernstein, and Dr. David Kingsbury, D.C.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT *Page 4 
1. As of the hearing date before the Deputy Commissioner, plaintiff was thirty-eight (38) years of age with his date of birth being December 30, 1972.
2. As of August 26, 2008, plaintiff had been employed by defendant-employer for eight years and ten months. Also, as of that date, plaintiff worked for defendant-employer as a dock worker and line haul driver. Plaintiff's duties included loading trucks with freight and transporting the loaded freight to other terminals. Plaintiff was required to frequently carry freight weighing as much as one hundred and ten (110) pounds for distances as long as forty-eight (48) feet. Additionally, plaintiff's duties required frequent pushing and pulling of freight weighing as much as five hundred (500) pounds using a dolly, and the manual pulling and pushing of freight weighing more than one hundred pounds (100). Plaintiff's job also required frequent reaching above shoulder level.
3. On August 26, 2008, plaintiff was involved in a motor vehicle accident while driving one of defendant-employer's trucks through Knoxville, Tennessee during inclement weather. While attempting to maneuver his truck into a different lane to avoid a car that had changed suddenly into his lane, the rear trailer hydroplaned causing the truck and trailer to overturn. At the time of the accident, plaintiff was traveling at forty-five (45) miles per hour in a fifty-five (55) mile per hour zone. Plaintiff was not charged or cited by any authority for any violation of law. As a result of this accident, plaintiff was thrown about within the cab, sustaining injuries to his left shoulder, head, and neck.
4. Defendant admitted the compensability of this incident through the filing of an Industrial Commission Form 60, which noted injuries to plaintiff's head, neck, and left shoulder. *Page 5 
5. On August 26, 2008, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment with defendant-employer involving his head, neck, and left shoulder.
6. Following his accident, plaintiff first received treatment at an emergency room in Tennessee, where he was provided a sling for his left shoulder.
7. Upon returning to Charlotte, defendant directed plaintiff to seek treatment at IndustriCare, where he was first examined on August 27, 2008. On that date, plaintiff reported experiencing head pain as well as a headache, nausea, and severe left shoulder pain. Plaintiff was medically excused from work and was referred for an orthopedic evaluation.
8. On September 10, 2008, plaintiff was examined by Dr. James E. Fleischli, at OrthoCarolina, for his left shoulder injury. On that date, plaintiff was diagnosed as having a Grade 2 AC joint separation of the left shoulder for which he was prescribed medication. Additionally, because Dr. Fleischli believed at the time that conservative treatment would be successful, plaintiff was advised to rest for four weeks and then to attend physical therapy.
9. By November 7, 2008, Dr. Fleschli's office had determined that conservative treatment had failed, and ordered a diagnostic arthroscopy. This procedure was performed on November 18, 2008, and during the procedure, Dr. Fleischli discovered a partial rotator cuff tear that had not been detected on prior MRIs. Dr. Fleischli repaired the rotator cuff tear and addressed the AC joint problem. Following this procedure, plaintiff was placed in a sling and participated in physical therapy for several months.
10. Regarding his headaches, records from IndustriCare dated October 6, 2008, reflect that by that date, plaintiff's headaches had resolved. However, plaintiff testified that subsequent to August 26, 2008, he continued to experience headaches, but that because he was taking *Page 6 
prescription pain medication for his left shoulder, the severity of his headaches was masked. Plaintiff further testified that his headaches were primarily on the left side of his head and caused dizziness and nausea. Plaintiff indicated that he experiences these types of headaches approximately two or three times per week.
11. Plaintiff's testimony regarding his headaches, their continuation, severity, and interaction with the prescription pain medication for his left shoulder, is deemed by the Full Commission to be credible.
12. On September 22, 2008, plaintiff was sent correspondence from defendant-employer indicating its determination that the accident of August 26, 2008, was "preventable" and that the incident would, therefore, affect his safety record.
13. At the hearing before the Deputy Commissioner, Mr. Tim Burch, who became defendant-employer's safety manager in May 2009, testified regarding the August 26, 2008, accident and defendant-employer's determination that it was "preventable." The primary reason cited for this determination was that plaintiff was driving too fast considering all of the conditions on that date.
14. Mr. Burch's testimony regarding defendant-employer's determination that the accident of August 26, 2008, was "preventable" is given no weight by the Full Commission.
15. On November 3, 2008, plaintiff returned to part-time, light-duty work for defendant-employer which consisted of sitting at a desk performing paperwork. Plaintiff received temporary partial disability compensation from defendant for the period he worked light-duty at reduced hours. *Page 7 
16. After approximately three months of working in his light-duty position, plaintiff was informed by defendant-employer that he could no longer work in such a position because he had no light-duty time remaining. Plaintiff believes this to have occurred in mid-April 2009.
17. At the time plaintiff was informed he could no longer work in a light-duty position and was sent home, he was not provided any information about his overall job performance.
18. After being prevented from continuing to work in his light-duty position, plaintiff asked Dr. Fleischli to allow him to return to work because he was concerned about losing his job. Plaintiff was then released on a trial return to work basis on May 27, 2009. As of that date, plaintiff continued to experience sharp pains and swelling in his left shoulder.
19. When plaintiff reported to work on May 29, 2009, he was terminated by Mr. Burch. Prior to the termination, plaintiff had received no information indicating he was going to be suspended or terminated for the accident.
20. At the time of his requested release to attempt a trial return to work, plaintiff continued to experience significant symptoms with his left shoulder and was physically restricted in the use of his left shoulder and arm.
21. Defendant has failed to produce any credible evidence upon which to find that plaintiff's termination on May 29, 2009, was for reasons unrelated to his admittedly compensable injury by accident, and was for misconduct or fault for which a non-disabled employee would also have been terminated.
22. Dr. Daniel Bernstein, the Medical Director of IndustriCare, testified that ninety-nine percent (99%) of plaintiff's physical therapy treatment at the clinic was related to his left shoulder, as opposed to his head or headaches. Dr. Bernstein also has opined to a reasonable degree of medical certainty that there was no need to refer plaintiff to a neurologist for further *Page 8 
treatment for a possible closed head injury because the injury plaintiff sustained on August 26, 2008, was minor and had completely resolved.
23. The Director of Rehabilitation for IndustriCare, Dr. David Kingsbury, D.C., testified that plaintiff's work-related activities were determined based upon the definition of occupational titles of a long haul truck driver, and on plaintiff's description of his duties as a dock worker provided on his initial intake form. At no time did Mr. Kingsbury or his office review a job description for plaintiff's job with defendant-employer as a dock worker and line haul driver. Nonetheless, Mr. Kingsbury testified that IndustriCare discharged plaintiff also without having obtained a functional capacity evaluation, hereinafter "FCE."
24. Dr. Fleischli has testified that he found plaintiff's reports of symptoms, physical abilities, and restrictions to be genuine.
25. The Full Commission gives greater weight to the testimony and opinions of Dr. Fleischli as opposed to those of Dr. Bernstein and Mr. Kingsbury.
26. Had plaintiff not been terminated on May 29, 2009, the trial return to work job in which he would have been working would not have been indicative of any true wage earning capacity given that plaintiff was released by Dr. Fleischli at plaintiff's request and not because he had healed or reached maximum medical improvement.
27. On June 29, 2009, Dr. Fleischli reassigned work restrictions to plaintiff that included no lifting or pushing greater than five pounds. Additionally, a functional capacity evaluation (hereinafter "FCE") was ordered.
28. Plaintiff's FCE revealed that he had a light capability physical demand level, exerting up to twenty (20) pounds occasionally and ten (10) pounds frequently. *Page 9 
29. Dr. Fleischli has opined that it is reasonably medically necessary for plaintiff to undergo a repeat left shoulder arthroscopy to determine if the rotator cuff tear had reoccurred or whether there was another problem such as excessive scar tissue stemming from the initial surgery which was necessitated by his admittedly compensable August 26, 2008, injury by accident. Defendant has presented no evidence that the surgery recommended by Dr. Fleischli is medically unnecessary.
30. Given the filing of their Industrial Commission Form 60, theParsons' presumption applies in this matter, thereby making it defendant's burden to prove that plaintiff's ongoing left shoulder symptoms, need for a repeat arthroscopy, headaches, dizziness, and nausea are not causally related to his admittedly compensable August 26, 2008, injury by accident.
31. Based upon the totality of the credible evidence of record, defendant has failed to rebut the Parsons' presumption regarding plaintiff's ongoing left shoulder symptoms, need for a repeat arthroscopy, as well as his headaches and related symptoms.
32. Plaintiff's ongoing shoulder symptoms are the direct and natural result of and causally related to his admittedly compensable August 26, 2008, injury by accident, and the initial left shoulder arthroscopy performed by Dr. Fleischli.
33. Plaintiff's ongoing headaches and related problems are the direct and natural result of and causally related to his admittedly compensable August 26, 2008, injury by accident.
34. After plaintiff's termination, he completed multiple applications and sought work during the period of June 8, 2009, through November 2, 2009. On November 23, 2009, plaintiff began training at a trade school in heating and air conditioning and was expected to complete that program in approximately July 2010. *Page 10 
35. Based upon the totality of the credible vocational and medical evidence of record, and as the result of plaintiff's admittedly compensable August 26, 2008, injury by accident, his initial left shoulder arthroscopy, and his headaches and related problems, plaintiff has been unable to earn any wages in his former position with defendant-employer for the period of May 29, 2009, through the present and continuing.
36. Defendant's actions in defense of this matter were unreasonable and indicative of stubborn, unfounded litigiousness.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On August 26, 2008, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment with defendant-employer involving his head, neck, and left shoulder. N.C. Gen. Stat. § 97-2(6).
2. Given the filing of their Industrial Commission Form 60, theParsons' presumption applies in this matter, thereby making it defendant's burden to prove that plaintiff's ongoing left shoulder symptoms, need for a repeat arthroscopy, headaches, dizziness, and nausea are not causally related to his admittedly compensable August 26, 2008, injury by accident.Parsons v. Pantry, Inc.,126 N.C. App. 540, 485 S.E.2d 867 (1997); Perez v. AmericanAirlines, 174 N.C. App. 128, 620 S.E.2d 288 (2005).
3. North Carolina law requires that where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to *Page 11 
the cause of the injury. Click v. Pilot Freight Carriers,Inc., 300 N.C. 164, 265 S.E.2d 389 (1980). Additionally, "the entirety of causation evidence" must "meet the reasonable degree of medical certainty standard necessary to establish a causal link."Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003);Young v. Hickory Bus. Furn.,353 N.C. 227, 538 S.E.2d 912 (2000). "[A]lthough medical certainty is not required, an expert's `speculation' is insufficient to establish causation." Id.
4. Based upon the totality of the credible evidence of record, defendant has failed to rebut the Parsons' presumption regarding plaintiff's ongoing left shoulder symptoms, need for a repeat arthroscopy, headaches, dizziness, and nausea. N.C. Gen. Stat. § 97-2(6); Parsons v. Pantry, Inc.,126 N.C. App. 540, 485 S.E.2d 867 (1997); Perez v. AmericanAirlines, 174 N.C. App. 128, 620 S.E.2d 288 (2005); Click v.Pilot Freight Carriers, Inc.,300 N.C. 164, 265 S.E.2d 389 (1980); Holley v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003); Young v. HickoryBus. Furn., 353 N.C. 227, 538 S.E.2d 912 (2000).
5. Assuming arguendo that the Parsons' presumption had been rebutted, there is sufficient medical evidence of record upon which to independently conclude that plaintiff's ongoing left shoulder symptoms, need for a repeat arthroscopy, headaches, dizziness, and nausea are the direct and natural result of and causally related to his August 26, 2008, injury by accident. N.C. Gen. Stat. § 97-2(6); Click v. Pilot FreightCarriers, Inc., 300 N.C. 164, 265 S.E.2d 389 (1980);Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003);Young v. Hickory Bus. Furn.,353 N.C. 227, 538 S.E.2d 912 (2000).
6. Defendant has failed to produce sufficient evidence upon which to find that plaintiff's termination on May 29, 2009, was for reasons unrelated to his compensable injuries, *Page 12 
and was for misconduct or fault for which a non-disabled employee would also have been terminated. Seagraves v. Austin Co. ofGreensboro, 123 N.C. App. 228, 472 S.E.2d 587 (1996).
7. Based upon the totality of the credible vocational and medical evidence of record, and as the result of his admittedly compensable August 26, 2008, injury by accident, his initial left shoulder arthroscopy, and his headaches and related problems, plaintiff is entitled to be paid by defendant ongoing total disability compensation at the rate of $786.00 per week for the period of May 29, 2009, through the present and continuing, until such time as he returns to work or until further Order of the Commission. N.C. Gen. Stat. § 97-29; Russell v. Lowe's ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
8. As the result of his admittedly compensable August 26, 2008, injury by accident, his initial left shoulder arthroscopy, and his headaches and related problems, plaintiff is entitled to have defendant pay for all related medical expenses incurred or to be incurred, subject to the provisions of N.C. Gen. Stat. § 97-25.1, including expenses associated with the repeat left shoulder arthroscopy recommended by Dr. Fleischli and treatment related to his ongoing headaches and related symptoms, when the medical bills have been approved according to established Industrial Commission procedures. N.C. Gen. Stat. §§ 97-25; 97-25.1
9. Because defendant's defense of this claim was unreasonable and based on stubborn, unfounded litigiousness, plaintiff is entitled to an award of attorney's fees as a sanction based upon a percentage of the accrued disability compensation payable to plaintiff. N.C. Gen. Stat. § 97-88.1; Donnell v. Cone MillsCorp., 60 N.C. App. 338, 299 S.E.2d 436, cert. denied,308 N.C. 190, 302 S.E.2d 243 (1983); Sparks v. Mountain BreezeRestaurant and Fish House, Inc.,55 N.C. App. 663, 286 S.E.2d 575 (1982). This attorney's fee shall not be deducted from *Page 13 
the amounts due plaintiff, but instead shall be paid to counsel for plaintiff in addition to those amounts due plaintiff.
10. Plaintiff filed a Motion for Contemptunder N.C. Gen. Stat. § 5A on July 2, 2010. Defendant responded and objected to Plaintiff's Motion. After consideration of the written and oral arguments of the parties, Plaintiff's Motion is hereby DENIED. Morales-Rodriguez v. Carolina Quality Exteriors,Inc., ___ N.C. App. ___, 698 S.E.2d 91 (2010); Roberts v. DixieNews, Inc., 189 N.C. App. 495, 658 S.E.2d 684 (2008).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Defendants shall pay to plaintiff ongoing total disability compensation at the rate of $786.00 per week for the period of May 29, 2009, through the present and continuing until such time as he returns to suitable employment or further Order of the Commission. From the amounts having accrued, this compensation shall be paid to plaintiff in a lump sum.
2. As a sanction for unreasonable defense, defendant shall pay plaintiff's attorney a reasonable attorney's fee at the rate of twenty-five percent (25%) of the accrued compensation due plaintiff, in addition to and not deducted from the compensation due plaintiff. That fee will be paid by paying an additional twenty-five percent (25%) of the accrued benefits due plaintiff and shall be paid directly to plaintiff's attorney.
3. A reasonable attorney's fee of twenty-five percent (25%) of the future compensation awarded to plaintiff in paragraph one (1) above, is hereby approved and every fourth (4th) payment due plaintiff shall be paid directly to plaintiff's attorney.
4. Defendant shall pay for all related medical expenses incurred or to be incurred by plaintiff as the result of his admittedly compensable August 26, 2008, injury by accident, his initial left shoulder arthroscopy, and his headaches and related problems, subject to the provisions of N.C. Gen. Stat. § 97-25.1, including expenses associated with the repeat left shoulder arthroscopy recommended by Dr. Fleischli and treatment related to his ongoing headaches and related symptoms, when the medical bills have been approved according to established Industrial Commission procedures.
5. Plaintiff's July 2, 2010, Motion for Contemptunder N.C. Gen. Stat. § 5A is hereby DENIED.
6. Defendant shall pay the costs.
This the 20th day of December, 2010.
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ LINDA CHEATHAM COMMISSIONER *Page 1